UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK JOHNSON,

               Plaintiff,

    -vs-

MICHAEL J. ASTRUE, Commissioner of
Social Security,

               Defendant.

**DECISION and ORDER
No. 6:12-CV-6059(MAT)**

---

## I.  Introduction

Represented by counsel, plaintiff Mark Johnson ("Johnson" or "Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") benefits. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons that follow, Defendant's motion is granted, and the Commissioner's decision is affirmed.

## II. Background

### A.  Facts

The basis for Johnson's disability is a closed cervical spine fracture he sustained while in a car accident on February 17, 2008.

(T.10).[1] The Court adopts and incorporates by reference herein the summary of the medical evidence set forth in Johnson's Brief (Dkt #7-1 at pp. 3-10) under the heading "Statement of Facts" and the summary set forth in the Commissioner's Brief (Dkt #6-1 at pp. 2-10) under the heading "The Administrative Record".

Johnson was forty-two years-old when he filed for SSI in 2008. He had completed tenth grade but did not have a General Equivalency Diploma. He testified that he had worked in construction from the time he was seventeen years-old until the date of his car accident on February 17, 2008. (T.21-22). According to Johnson, he broke his neck in two places, and had "basically . . . been decapitated," with only his skin holding his head on to his neck and spine. (T.22). Johnson refused a "halo" to immobilize his head and neck because he did not want screws in his head. (T.22).

Johnson testified that since the accident, he has had pain starting on the back of his neck, which requires him to stand up and walk around. However, he can only walk around briefly because his back will start hurting, requiring him to sit down. (T.26). Bending over and looking all the way upwards causes pain. (T.27). Walking, sitting for too long, and standing for too long make the pain worse. (T.28). Johnson stated that the pain makes it difficult

---

[1]

Numbers in parentheses preceded by "T." refer to pages from the administrative record, submitted as a separately bound exhibit in this proceeding.

to concentrate and to sleep. (T.28-29). He could get comfortable if he sits in a reclining position with his feet elevated. (T.29).

Johnson testified that he was depressed because he used to be strong and could work as a roofer to earn money. (T.30). He testifies that he spends his days helping to take care of his three small children (he lives with his sister), reading, watching TV, going to the park, and occasionally attending church. (T.30-31). Johnson is able to bathe and dress himself. (T.32-33). He goes shopping but has difficulty carrying anything that weighs more than 10 pounds.

### B.   Procedural History

On March 17, 2008, Plaintiff filed an application for SSI, alleging disability since February 17, 2008, due to back and head injuries, back pain, numbness in his legs, and impaired mobility, all stemming from a motor vehicle accident on the onset date. The claim was denied, and he then filed a request for an administrative hearing. On April 12, 2010, Plaintiff appeared with his attorney and testified at a hearing, with Administrative Law Judge Cameron Elliott ("the ALJ") presiding via videoconference. (T.17-37). On May 4, 2010, the ALJ issued an unfavorable decision, which Plaintiff's attorney appealed to the Appeals Counsel. (T.95-98). On December 16, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T.1-4). This timely action followed.

## III. Legal Principles

### A.    Standard of Review

The Commissioner's decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); see also, e.g., Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

"[I]t is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

This deferential standard is not applied to the Commissioner's conclusions of law, however. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984); see also, e.g., Tejada, 167 F.3d at 773. This Court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112.

Therefore, this Court firsts reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); see also Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.") (quoting Johnson, 817 F.2d at 986).

### B.   Five-Step Sequential Evaluation

To be considered disabled within the meaning of the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). Furthermore, the plaintiff's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. Id., § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520; see

also, e.g., Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).
Initially, the burden of proof lies with the claimant to show that
his or her impairment(s) prevents a return to previous employment
(Steps One through Four). Berry, 675 F.2d at 467. If the claimant
meets that burden, the Commissioner bears the burden at Step Five
of establishing, with specific reference to the medical evidence,
that the claimant's impairment or combination of impairments is not
of such severity as to prevent him from performing work that is
available in the national economy. Id.; 42 U.S.C. § 423(d)(2)(A);
see also, e.g., White v. Sec'y of Health and Human Servs., 910 F.2d
64, 65 (2d Cir. 1990). In making the required showing at Step Five,
the ALJ must consider the claimant's RFC along with other
vocational factors such as age, education, past work experience,
and transferability of skills. 20 C.F.R. § 404.1520(f); see also,
e.g., State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990).

## IV.  The ALJ's Decision

The ALJ determined that Johnson has the following "severe"
impairment: "status post cervical spine fracture." (T.10). Although
Johnson has hypertension, there was no evidence that it affects him
more than minimally, and therefore it is not severe. (T.10).
Johnson has been diagnosed with asthma, but he did not mention it
at the hearing, he takes no medication for it, and he continues to
smoke a pack per day of cigarettes. (T.10).

While Johnson alleged a mental impairment in his application,
and testified that he suffers from depression, the ALJ found that

"his only depressive symptom is sleep disturbance, which is explained by his pain[.]" (T.10). Even though the ALJ determined Johnson's depression was not a medically determinable impairment, he went on to consider its effects on the four broad areas of functioning and found that it did not cause more than "mild" limitation in any functional area. (T.10-11).

In determining whether Johnson's impairment met or equaled the criteria of a listed impairment, the ALJ specifically considered Listing 1.02 (disorders of the spine). (T.11). However, because Johnson was able to ambulate effectively, he could not meet this listing. (T.11). The ALJ extensively considered Johnson's subjective complaints, but found them not entirely credible based upon the record as a whole. (T.14-15). The ALJ went on to assess Johnson's residual functional capacity ("RFC") and found that he had the ability to perform sedentary work, with the additional limitations of only occasionally having to stoop, crouch, and reach. (T.12-15). The ALJ found that these limitations had "little or no effect" on the occupational base of unskilled sedentary work. (T.16) (citations omitted).

The ALJ determined that as of the date of Johnson's application, he could not return to his past relevant work. (T.12-15). As a younger individual with a limited education, Johnson had the RFC to perform jobs that existed in significant numbers in the national economy, i.e., surveillance system monitor (Dictionary of Occupation Titles ("DOT") 379.367-010); call-out operator (DOT

237.367-014); and election clerk (DOT 205.367-030). (T.16). Accordingly, the ALJ found, a finding of "not disabled" was appropriate. (T.16).

## V.   Plaintiff's Contentions

Plaintiff makes the following contentions in his brief in support of his motion for judgment on the pleadings: (1) the ALJ failed to apply the treating physician rule and other legal standards in evaluating Plaintiff's residual functional capacity ("RFC"); (2) the ALJ did not properly evaluate Plaintiff's subjective statements regarding his symptoms and impairments; and (3) the ALJ erroneously failed to consult a vocational expert ("VE") at Step Five. Plaintiff's Memorandum of Law ("Pl's Mem.") at 1 (Dkt #7-1).

### A.   Errors in the ALJ's RFC Assessment

#### 1.   The Treating Physician's Medical Source Opinion

Dr. Luke Smart saw Johnson for back pain and completed a Medical Source Opinion ("MSO") after seeing Johnson for two visits. According to Dr. Smart, Johnson does not need a cane; is probably capable of low stress work; can walk one block at a time; can sit for 15 minutes and stand for 10 minutes at a time, and can do both for less than two hours out of a work day; must be allowed to alternate between sitting and standing; must be allowed to take unscheduled breaks about every hour; and will be absent, due to his impairments, more than four days per month; and has other postural, manipulative, and exertional limitations. (T.383-87).

-8-

### 2.    The Consultative Examiner's Opinion

Dr. Harbinder Toor conducted a consultative physical examination of Johnson and opined that he had "moderate to severe" limitations in twisting, bending, and extending the neck and spine; "moderate to severe" limitations in pushing, pulling, lifting, and reaching because of pain in his neck and shoulders; and "moderate" limitations in "walking a long time." (T.202-03).

### 3.    The ALJ's RFC Assessment

The ALJ stated that "[g]iving the claimant the benefit of the doubt, the opinion of the consultative examiner[] that the claimant has moderate to severe exertional, postural and manipulative limitations . . . is fully credited and construed as a limitation to sedentary work with occasional stooping, crouching and reaching." (T.14).  For purposes of the Act, work is considered "sedentary" if it

> involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket
> files, ledgers, and small tools. Although a sedentary job
> is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in
> carrying out job duties. Jobs are sedentary if walking
> and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. § 404.1567(a). The Social Security Administration has clarified that

> "[o]ccasionally" means occurring from very little up to
> one-third of the time, and would generally total no more
> than about 2 hours of an 8-hour workday. Sitting would
> generally total about 6 hours of an 8-hour workday.
> Unskilled sedentary work also involves other activities,

classified as "nonexertional," such as capacities for
seeing, manipulation, and understanding, remembering, and
carrying out simple instructions.

Social Security Ruling 96-9p; see also Perez v. Chater, 77 F.3d 41,
46 (2d Cir. 1996) (citing Social Security Ruling 83-10).

### 4. Analysis

Plaintiff argues that the ALJ's RFC finding "is not in
compliance with the applicable legal standards" because the ALJ, as
a lay person, improperly "extrapolate[d] functional
limitations . . . by 'construing' moderate to severe [sic] into
sedentary work; particularly without offering a rationale to
reconcile treating source Dr. Smart's specific functional
limitations with the vague (but severe) limitations provided by
Dr. Toor." Pl's Mem. at 13.

As an initial matter, Plaintiff has glossed over the fact that
the ALJ did accept certain of Dr. Toor's "moderate to severe"
limitations, even though such concededly "vague" limitations have
been found by reviewing courts to be substantial evidence for
rejecting a consultative examiner's opinion. See Pellam v. Astrue,
No. 12-1412, 2013 WL 309998, at *2 (2d Cir. Jan. 28, 2013)
(unpublished opn.) (citing Curry v. Apfel, 209 F.3d 117, 123 (2d
Cir. 2000), superceded by regulation on other grounds by 20 C.F.R.
§ 404.1560(c)(2)).

Plaintiff argues that the ALJ improperly "extrapolated"
functional limitations out of "'bare medical findings[.]'" Pl's

-10-

Mem. at 13 (quoting <u>Collins v. Astrue</u>, 10-CV-00718(A)(M), 2012 WL 2573264, at * (W.D.N.Y. May 11, 2012), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 10-CV-00718(A), 2012 WL 2573261 (W.D.N.Y. June 29, 2012) (citing <u>Deskin v. Commissioner of Soc. Sec.</u>, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008); <u>Isaacs v. Astrue</u>, No. 1:08-CV-00828, 2009 WL 3672060, at *11 (S.D. Ohio Nov. 4, 2009)). The cases cited by Plaintiff are inapposite. In <u>Collins</u>, in contrast to Johnson's case, there was no medical source statement from the plaintiff's treating source addressing his physical capabilities, and therefore the consultative examiner's assessment was critical to the ALJ's RFC assessment. 2012 WL 2573264, at *10-11. In <u>Isaacs</u>, the ALJ's finding that the plaintiff had the RFC for medium work was "based solely upon the ALJ's own lay medical opinion." <u>Isaacs</u>, 2009 WL 3672060, at*10. In <u>Deskin</u>, as in <u>Isaacs</u>, the ALJ made an RFC determination without a medical advisor's assessment. <u>Deskin</u>, 605 F. Supp.2d at 912 (citation omitted). In <u>Collins</u>, <u>Deskin</u> and <u>Isaacs</u>, medical source opinions from the plaintiffs' treating physicians were lacking. Thus, they are factually distinguishable from Johnson's case.

Plaintiff also argues that the ALJ failed to properly apply the treating physician's rule by declining to give Dr. Smart's Medical Source Opinion ("MSO") "controlling weight or even significant weight." (T.14). The ALJ assumed that Plaintiff "exaggerated his symptoms when giving his history to Dr. Smart, as

he did at the hearing,"[2] thereby "cast[ing] into doubt" Dr. Smart's "whole opinion." (T.14).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also, e.g., Halloran v. Barnhart, 362 F.3d 28, 31–32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).[3]

The ALJ had sufficient reason to discount Dr. Smart's opinion. First, as the ALJ noted, Dr. Smart had only seen Plaintiff on two occasions, and thus they did not have a long-standing treating relationship. Second, Dr. Smart's opinion that could sit and stand/walk for less than two hours in an eight-hour workday is not supported by other evidence in the record, including Plaintiff's

---

[2]

The ALJ's assessment of Plaintiff's credibility is discussed further below in the following section.

[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, the ALJ still may give it "extra weight" after considering the following factors: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) the extent to which the opinion is supported by other record evidence, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the adjudicator. C.F.R. § 404.1527(d)(1)-(6); see also, e.g., Clark v. Commissioner of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

own testimony and his statements to examining physicians. (E.g., T.212 (stating to consultative psychiatric examiner that he spends his days doing light chores, reading, socializing, and watching television)). Such a limitation implies that Plaintiff is essentially confined to bed, but that is not the case.

In addition, it appears that a significant factor in Dr. Smart's opinion was his diagnosis of Plaintiff's depressed mood. (T.383, 384). However, the psychiatric consultative examiner, Dr. Dennis Noia, noted that Johnson's mood was "neutral", his intellectual functioning appeared to be in the average range, his insight and judgment were "good", and he appeared to be "capable of dealing with stress." (T.212-13). Accordingly, the examination "suggest[ed] no significant psychiatric problems[,]" and Dr. Noia assigned no Axis I diagnosis.

## B.    Errors in the ALJ's Credibility Assessment

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T.13). As Plaintiff points out, there is no support in the regulations or the caselaw from this Circuit supporting the propriety of basing a credibility determination solely upon whether the ALJ deems the claimant's allegations are congruent with the ALJ's own RFC finding. See, e.g., Smollins v. Astrue,

No. 11-CV-424, 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011); Nelson v. Astrue, No. 5:09.CV.00909, 2010 WL 3522304, at *6 (N.D.N.Y. Aug. 12, 2010).

However, the ALJ in Johnson's case went on to discuss his credibility by comparing aspects of his testimony to the record evidence. The ALJ noted that "[i]nasmuch as the claimant's allegations are not consistent with his residual functional capacity, it is because the claimant's allegations, statements, and testimony are not fully credible." (T.14). The ALJ then articulated specific reasons for finding Plaintiff not fully credible. As the ALJ noted, Plaintiff has an "erratic work history, with no substantial gainful activity since 2000, well before the alleged onset date, suggesting a lack of motivation to work." (T.14). Given that Johnson was previously denied disability benefits in 2005, the ALJ found Johnson's account of his work experience-that he had worked as a roofer for the past 10 years and garnered sufficient earnings to support his family-to be "bizarre." (T.14). Plaintiff contradicted himself on this point on other occasions, stating on a 2008 Disability Report that he worked as a roofer from 1998 to 2003, but then informing a consultative examiner in 2008 that he had last worked as a roofer in 2007, and subsequently testifying that he had last worked on the date of his accident in February 2008. (T.14) (citations to record omitted).

With regard to his personal information, Johnson stated in his Disability Report that he had only attended high school through the

tenth grade, but he told a consultative examiner that he had finished high school. (T.14). He testified that he lives with his three young children, but he told a consultative examiner that he does not perform childcare. (T.14). Johnson testified that he can only sit for 10 to 13 minutes at a time, but the ALJ observed that he sat through the administrative hearing, which lasted over 30 minutes. (T.14). He told a treating source that Tramadol provides adequate pain relief, but he testified that no medication adequately relieves his pain. (T.14-15).

Moreover, as the ALJ noted, Johnson greatly exaggerated his injuries, describing them in terms not supported by the record. He characterized his neck injury during the motor vehicle accident as "essentially a decapitation, with his head held onto his body just by his skin, and that his injury was like a lynching." (T.15). To the contrary, his injury was a non-displaced fracture of his C2 vertebra and a mildly displaced fracture of his C1 vertebra. (T.15) (citation omitted). Johnson testified that he exercises to help ease his pain, but he has refused to go to physical therapy because, he claims, it hurts too much. He sleeps with a soft neck brace at night to help make him more comfortable, but, at the time of his injury, he declined a "halo"-type neck brace recommended by his doctors saying that he did not want it screwed into his head. (T.15).

In addition, as the ALJ noted, Johnson was "completely non-compliant with all recommended treatment" for his cervical

fractures and medical appointments. (T.15) (citations omitted). The ALJ did not err in taking into account this evidence, as one factor that may impact the claimant's credibility is a showing that the claimant is not following the treatment as prescribed, and no good reason exists for that failure. See Social Security Ruling 96-7p ("SSR 96-7p"), 1996 WL 374186, at *2 (S.S.A. July 2, 1996).

"Conclusory findings of a lack of credibility will not suffice; rather, an ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" Escalante v. Astrue, No. 11 Civ. 375, 2012 U.S. Dist. LEXIS 879, at *23, 2012 WL 13936 (S.D.N.Y. Jan. 4, 2012)) (quoting Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34,483, 34,484 (July 2, 1996)). Here, the ALJ's credibility finding was not conclusory. He discussed in detail specific aspects of Plaintiff's testimony concerning his limitations and symptoms, compared them to the record evidence, and explained how he arrived at his conclusions.

## C.   The ALJ's Failure to Consult a VE

Plaintiff contends that at Step Five, the ALJ erred in relying exclusively on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the

Grids", and failing to consult a VE. Plaintiff argues that his pain was a significant nonexertional impairment that precluded the ALJ from solely relying on the Grids. See 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00(e)(2), 201.00(h); see also Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986).

Plaintiff states he "clearly suffers from pain and postural limitations[,]" and "[t]hese limitations according to Drs. Smart and Toor would result in significant postural, mental (concentration and memory), and manipulative limitations." Pl's Mem. at 18. Plaintiff's argument is not supported by the record evidence. Contrary to Plaintiff's suggestion, the consultative psychiatric examiner, Dr. Noia, found that Johnson's attention and concentration were intact; and he was able to do counting, simple calculations, and serial 3s. (T.212). Although his recent and remote memory skills were mildly to moderately impaired, based on his ability recall objects and restate digits, Dr. Noia found Johnson's cognitive functioning to be normal and appropriate. (T.212). With regard to manipulative limitations, Dr. Smart did not indicate that Johnson had any limitations in his abilities to use his hands to grasp, turn, and twist objects; or to use his fingers to perform fine manipulations. (T.386). Finally, the postural limitations ascribed to Johnson by Dr. Smart and Dr. Toor were incorporated by the ALJ into his RFC assessment, as discussed above. Thus, the errors asserted by Plaintiff do not appear to be

well-founded, and the Court concludes that the ALJ did not commit
legal error in declining to call a VE.

**VI.  Conclusion**

    After careful review of the entire record, this Court finds
that the Commissioner's denial of benefits was not erroneous as a
matter of law and was based upon substantial evidence. Accordingly,
the ALJ's decision is affirmed. Defendant's motion for judgment on
the pleadings (Dkt #6) is granted, Plaintiff's motion for judgment
on the pleadings (Dkt #7) is denied, and the complaint (Dkt #1) is
dismissed.

        **IT IS SO ORDERED**.

                        S/Michael A. Telesca

                        _____

                        HONORABLE MICHAEL A. TELESCA
                        United States District Judge

Dated:    March 19, 2013
          Rochester, New York